IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| J.D. LITTLEJOHN, III, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:22-cv-00109 |
| ) | Judge Trauger |
| CORE CIVIC, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Plaintiff J.D. Littlejohn, III, an inmate of the Trousdale Turner Correctional Center (TTCC) in Hartsville, Tennessee, has filed a pro se Complaint for alleged violations of his civil rights pursuant to 42 U.S.C. § 1983, along with an application to proceed in forma pauperis (IFP). (Doc. Nos. 1, 2.) The matter is before the court for a ruling on the plaintiff's IFP application and an initial review of the Complaint pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(e)(2) and 1915A, and 42 U.S.C. § 1997e.

### I. APPLICATION TO PROCEED AS A PAUPER

A prisoner bringing a civil action may be permitted to file suit without prepaying the filing fee required by 28 U.S.C. § 1914(a). 28 U.S.C. § 1915(a). Because it appears from the plaintiff's submission that he lacks sufficient financial resources from which to pay the full filing fee in advance, the court **GRANTS** his application (Doc. No. 2) to proceed IFP in this matter.

### II. INITIAL REVIEW

**A. PLRA Screening Standard**

The court must conduct an initial review and dismiss the Complaint if it is facially frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary

relief against a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e. To determine whether the Complaint states a plausible claim, the court "must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). A pro se pleading must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

The plaintiff sues under 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). To state a Section 1983 claim, a plaintiff must allege: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that "the deprivation was caused by a person acting under color of state law." *Tahfs v. Proctor*, 316 F. 3d 584, 590 (6th Cir. 2003) (citations omitted); 42 U.S.C. § 1983.

**B. Plaintiff's Allegations[1]**

The plaintiff asserts that his conditions of confinement violate "the Constitution and laws that prohibit[ ] the infliction of cruel and unusual punishment[.]" (Doc. No. 1 at 1.) He claims that Core Civic, the private prison management company operating TTCC, and four of its executives– Damon T. Hininger, David M. Garfinkle, Todd J. Mullenger, and Harley G. Lappin–are "fraudulently and illegally operating [TTCC] under unsafe conditions while poorly under-staffed,

---

[1] The court notes that the plaintiff recently filed a pleading styled a "Civil Suit" (Doc. No. 5), which appears to be a verbatim, handwritten copy of the typewritten Complaint. This order refers only to the original Complaint (Doc. No. 1).

2

as a deliberate strategy to increase its profits off of mass incarceration[.]" (*Id.* at 2.) These conditions have allegedly "resulted in immediate, and on-going horrifying bloody encounters from routine beatings, stabbings, deaths, and life-threatening danger, and rageful violence at [TTCC], more than any other Tennessee prison in the same time-frame[.]" (*Id.*) The defendants "insist on continuously making profits" and have "never attempted to decrease [TTCC's] prison population" but have instead "engag[ed] in forced labor" by requiring their staff to work additional shifts while misrepresenting the accounting of TTCC staffing and incident reports to auditors in order to preserve profits. (*Id.* at 2–3.) Due to insufficient staffing, TTCC instituted a policy of locking down one cell block per housing unit per day. (*Id.* at 3.) The plaintiff alleges that, despite not keeping proper records of serious incidents of violence within the facility, TTCC was recognized as the state prison with the most incidents involving serious risk to the facility or community over an 18-month period from 2017 to 2019. (*Id.* at 4.) He asserts that the defendants have maintained a policy or custom of operating TTCC without adequate staff, in a manner that is deliberately indifferent to the safety of its inmates. (*Id.* at 4–5.)

The plaintiff arrived at TTCC in 2016 as a minimum-security inmate. (*Id.* at 4.) Since that time, he alleges that he has witnessed unchecked inmate violence and claims that "being surrounded by and living with the 'constant fear' of becoming a victim of such deadly and rageful violence" amounts to cruel and unusual punishment. (*Id.* at 4–5.) He sues Core Civic and its executives in their official capacity, seeking $100 million in damages to compensate him for "years of fear, mental anguish, misery, mental pain, emotional harm[,] and psychological stress and trauma," causing injury to his "present and future (mental) health." (*Id.* at 6 (parentheses in original).)

Finally, the plaintiff alleges that he was "yield" (by which the court assumes he means

prevented) from attending his May 2021 parole hearing "while being illegally house[d] on close [custody]." (*Id.* at 5.) He alleges that he was "deprived of all his constitution[al] rights" when he was denied the ability to attend this scheduled parole hearing by defendants Vantell, Upton, Brauns, Hill, and Hawkins. (*Id.*) The plaintiff alleges that the only response he received to his complaints about missing the May 2021 parole hearing was that his "next review date will come from the docket downtown in Nashville." (*Id.*) He states that "something doesn't seem right about" this response, and that, "[i]f you ask [him,] somewhere at some point someone has done something illegally and [prevented him] from going to his parole hearing[.]" (*Id.* at 6–7.) The plaintiff does not request any relief for this deprivation of the opportunity to attend a scheduled parole hearing, apart from the damages he requests for being subjected to unsafe prison conditions.

C. Analysis

    1. Missed Parole Hearing

The plaintiff's assertion that he was illegally prevented from attending a scheduled parole hearing due to his "close" custody status and forced to wait for a rescheduled hearing does not amount to a constitutional violation. Prisoners do not have a constitutional right to parole or a parole hearing, *Crump v. Lafler*, 657 F.3d 393, 404 (6th Cir. 2011), nor does "the Tennessee parole scheme . . . create an expectation that parole will be granted that is sufficient to trigger a constitutionally protected liberty interest." *Swatzell v. Tennessee Bd. of Parole*, No. 3:18-cv-01336, 2019 WL 1533445, at *4 (M.D. Tenn. Apr. 9, 2019) (citing *Wright v. Trammell*, 810 F.2d 589, 590–91 (6th Cir. 1987)). "Because plaintiff has no liberty interest in obtaining parole under [state] law, he cannot contest the unconstitutionality of procedural devices attendant to parole decisions, such as rescheduling parole hearings" for inmates whose custody level has changed due to disciplinary concerns. *Nelson v. Miranda*, No. CIV. A. 96-CV-2854, 1997 WL 327381, at *5

(E.D. Pa. May 6, 1997) (ruling against inmate who claimed to have been prevented from attending a parole hearing because he had been placed in segregation pending the outcome of a misconduct hearing). Thus, the plaintiff's allegation of a missed parole hearing does not support any viable claim under Section 1983.

2. Claim to Compensable Injury from Violent Prison Conditions

Violence among prison inmates has proven to be an intractable problem, as "[p]risons are by definition places where violent people are housed involuntarily." *McGhee v. Foltz*, 852 F.2d 876, 880 (6th Cir. 1988). An inmate who "has suffered or is threatened with suffering actual harm" as a result of such violent conditions of confinement may establish a violation of the Eighth Amendment's prohibition against cruel and unusual punishments, *Wilson v. Yaklich*, 148 F.3d 596, 601 (6th Cir. 1998), upon "evidence showing that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past," and that the defendant prison officials had reason to know of the risk yet failed to respond reasonably to address it. *Farmer v. Brennan*, 511 U.S. 825, 842–45 (1994) (internal quotation marks omitted).

However, to establish standing under Article III of the Constitution to challenge the misconduct alleged here, the plaintiff must establish an injury-in-fact—that is, a "concrete, particularized, and actual or imminent" injury—that is "fairly traceable to the challenged action[ ] and redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Monsanto Co. v. Geertson Seed Farms*, 130 S. Ct. 2743, 2752 (2010)). Where the alleged injury has not occurred but is threatened, its occurrence must be imminent, meaning that the injury must be "certainly impending." *Id.* ("[W]e have repeatedly reiterated that threatened injury must be *certainly impending* to constitute injury in fact, and that allegations of *possible* future injury are not sufficient.") (emphasis in original). *See also Hugueley v. Haslam*, No. 3:16-cv-02885, 2017

WL 194288, at *4 (M.D. Tenn. Jan. 18, 2017) (dismissing complaint at initial screening because, e.g., death row inmate lacked standing based on allegation that he "could possibly or potentially be threatened or harmed by [other] death row inmates as a result of the security issues" arising from lax operation of the death row unit at prison, where violence was allegedly a daily threat). The plaintiff carries the burden of establishing his standing to sue, "and at the pleading stage, [he] must clearly allege facts demonstrating each element" recited above. *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 861 (6th Cir. 2020) (citing *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)).

    The Complaint in this case does not allege that the plaintiff has been the victim of any attack or that he has suffered any physical injury. The Complaint instead asserts that Plaintiff has suffered emotional distress resulting from "living with the 'constant fear' of becoming a victim" of such an attack, and that this fear "suffice[s] as the requisite injury." (Doc. No. 1 at 5.) But fear of a future harm is "an 'injury' that is rarely cognizable," precisely because the feared harm must be "certainly impending" to constitute an injury-in-fact. *Buchholz*, 946 F.3d at 865 (quoting *Clapper*, 568 U.S. at 410). The physical attack that the plaintiff fears cannot be characterized as "certainly impending," if for no other reason than that he has resided at TTCC "in the intolerable, perilous, notorious and unsafe conditions from April of 2016 until the present time" *without* being attacked. (Doc. No. 1 at 5.) Nor would such a fear of future harm—even if it sufficed to establish standing—be compensable in a case asserting unsafe conditions of confinement. *See Wilson*, 148 F.3d at 601(quoting *Babcock v. White*, 102 F.3d 267, 272 (7th Cir. 1996)) ("However legitimate [the plaintiff's] fears may have been, we nevertheless believe that it is the reasonably preventable assault itself, rather than any fear of assault, that gives rise to a compensable claim under the Eighth Amendment. [A] claim of psychological injury does not reflect the deprivation of 'the minimal

6

civilized measures of life's necessities' that is the touchstone of a conditions-of-confinement case."
(internal citations omitted)); *Seabrooks v. Core Civic*, No. 3:17-1328, 2019 WL 1015093, at *4
(M.D. Tenn. Mar. 4, 2019), *report and recommendation adopted sub nom. Seabrooks v. CoreCivic*,
No. 3:17-cv-01328, 2019 WL 1359492 (M.D. Tenn. Mar. 26, 2019) ("The holding in *Wilson*
requires dismissal of Plaintiff's Eighth Amendment failure to protect claim given Plaintiff's lack
of allegations that he suffered an actual physical injury caused by Defendants' alleged deliberate
indifference to his safety.").

Nonetheless, while fear of future harm is explicitly identified as the plaintiff's "requisite injury," he also alleges that he "has been traumatically impacted" (Doc. No. 1 at 3) by "witnessing the on-going, horrifying bloody encounters from routine beatings, stabbings, [and] deaths" that were enabled by understaffing at TTCC, and he sues for damages to compensate him for injury to "his present and future mental health" inflicted by that trauma. (*Id.* at 6.) For purposes of initial review, the court finds these allegations sufficient to meet the plaintiff's burden at the pleading stage of establishing standing based on an injury-in-fact that is fairly traceable to the defendants' actions and redressable by a favorable ruling. *See Buchholz*, 946 F.3d at 864 (recognizing that injury-in-fact may be established by "emotional distresses . . . accompanied by corroborating allegations that established more than bare anxiety" about future harm).

However, the plaintiff is prevented by statute from pursuing damages for injuries to his mental or emotional health in the absence of a physical injury. The PLRA bars any "Federal civil action . . . brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act [involving physical contact]." 42 U.S.C. § 1997e(e). The only injury alleged in the Complaint, and the sole basis for the plaintiff's request for damages, is the mental

7

or emotional injury caused by witnessing the violence between other inmates at TTCC. (Doc. No. 1 at 4–5.) Because the plaintiff seeks to recover strictly for mental or emotional injuries produced by the conditions of his confinement without alleging any physical injury, Section 1997e(e) bars his action for damages. *See Seabrooks*, 2019 WL 1015093, at *4 (finding dismissal under § 1997e(e) proper where inmate did not allege physical injury but only fear of gang-member inmates) (citing, *e.g.*, *Wallace v. Holloway*, No. 16-2390-STA-EGB, 2017 WL 4001569, at *7 (W.D. Tenn. Sept. 11, 2017) (holding that § 1997e(e) barred inmate's failure-to-protect claim based on "emotional anxiety and fear for his safety" from being housed with violent gang members whom he had fought on two occasions, as inmate "has not alleged that the fights caused him any physical injuries"); *Glover-Bryant v. Uptagraft*, No. CIV.A. 09-CV-134-JMH, 2009 WL 2877149, at *6 (E.D. Ky. Sept. 2, 2009) (holding inmate barred under § 1997e(e) from recovering for "grievous nature of her trauma and her emotional state" after strip-search in public view, as "it is damages for just such invisible injuries which Congress has chosen to preclude in prisoner lawsuits"); *Jackson v. Smith*, No. 1:05-CV-834, 2006 WL 118284, at *4 (W.D. Mich. Jan. 13, 2006) (holding that § 1997e(e) barred inmate's claim of mental anguish based on fear of retaliation by prison guard, which provoked anxiety attack requiring medical attention, inasmuch as "[t]he Sixth Circuit has repeatedly held that Eighth Amendment claims for monetary relief based on mental or emotional injury are precluded by § 1997e(e) absent a showing of physical injury") (citing cases); *cf. King v. Zamiara*, 788 F.3d 207, 213 (6th Cir. 2015) (holding that plain language of § 1997e(e) only bars actions "for mental or emotional injury" without a prior showing of physical injury, not actions for First Amendment violations resulting in constitutional injury "distinct from any mental or emotional injury" the prisoner might also have suffered).

### 3. Claim for Injunctive Relief

Unlike his request for damages, which "seek to compensate . . . for past injuries," *Wilson*, 148 F.3d at 601 (citing *Carey v. Piphus*, 435 U.S. 247, 254–57 (1978)), the plaintiff's request for "[s]uch other and further relief as the Court deems just and proper for the Pro[ ]se-Plaintiff suffering unduly under the unsafe conditions of confinement at [TTCC]" (Doc. No. 1 at 6) may be liberally construed as seeking prospective injunctive relief. *Gowins v. Greiner*, 2002 WL 1770772, at *4 n.4 (S.D.N.Y. 2002). A claim for prospective relief "need not await a tragic event," *Helling v. McKinney*, 509 U.S. 25, 33 (1993), but may be granted when prison officials are deliberately indifferent to "prison conditions fostering unconstitutional threats of harm to inmates." *Wilson*, 148 F.3d at 601.

However, the Complaint does not allege sufficient facts to support a plausible claim to injunctive relief based on deliberate indifference to the risk posed by understaffing. The Complaint broadly alleges that the defendants have "fraudulently and illegally circumvent[ed] auditors . . . by continuously misrepresenting . . . Staffing and Serious Incident Reports" since TTCC's opening in 2016, and that they "did not properly maintain records of serious incidents within the facility" between 2017 and 2019. (Doc. No. 1 at 2, 4.) But even presuming the truth of these allegations, the Complaint also alleges that the defendants are currently responding to the risk posed by insufficient staffing by "taking alternative measures," including requiring existing staff to work extra shifts and instituting "a daily lock-down of a cell-block from every housing unit at [TTCC]." (Doc. No. 1 at 3.) While the plaintiff may not appreciate these "alternative measures," he does not allege facts from which the court could infer that they support a finding of deliberate indifference or that they themselves impose any unconstitutional hardship.

"In this regard, frequent or protracted lockdowns may create conditions amounting to a constitutional deprivation," but "most short-term lockdowns do not pose such problems." *Miller v. Winnebago Cnty. Sheriff's Off.*, No. 18 C 50334, 2019 WL 184078, at *3 (N.D. Ill. Jan. 14, 2019) (dismissing on initial review claim based on "unnecessary lockdowns at the jail due to understaffing"). *See also Pierson v. Neil*, No. 1:19-CV-843, 2019 WL 5781948, at *4 (S.D. Ohio Nov. 6, 2019), *report and recommendation adopted*, No. 1:19CV843, 2021 WL 1996560 (S.D. Ohio May 19, 2021) ("occasional, brief lockdowns" do not violate the Eighth Amendment). Nor does the mere fact that the defendants are paying current staff to work overtime, rather than hiring additional staff as the plaintiff would like, equate to deliberate indifference to the safety of the inmate population. Instead, it appears from these allegations that the defendants are attempting to manage their alleged understaffing, and "[w]hile Plaintiff may believe the . . . strategy employed is deficient, his allegations suggest at the very least that the Defendants are not deliberately indifferent to the safety of [the] inmates." *Hugueley*, 2017 WL 194288, at *5 & n.6. Accordingly, even liberally construing the Complaint to request injunctive relief, it fails to state a plausible claim of entitlement to such relief as currently constituted.

Nevertheless, because the plaintiff did not explicitly assert a claim to injunctive relief, the court in the interest of justice will grant the plaintiff leave to amend his Complaint so that he may more fully present this claim to relief if he so desires. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013) (holding "that under Rule 15(a) a district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the PLRA").

### III. CONCLUSION

While the Complaint is subject to dismissal for failure to state a claim on which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A, and 42 U.S.C. § 1997e(e), the

10

court will allow the plaintiff to amend his Complaint to assert a claim to injunctive relief **if** he files such an amendment within **30 DAYS** of the entry of this order. The Clerk is **DIRECTED** to provide the plaintiff with a form for filing a civil rights complaint (Pro Se Form 14).

The plaintiff is cautioned that failure to file an amended complaint within 30 days or to seek an extension of this deadline before it expires will result in dismissal of this action.

It is so **ORDERED**.

Aleta A. Trauger
United States District Judge