# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| J.D. LITTLEJOHN, III, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:22-cv-00109 |
| ) | Judge Trauger |
| CORE CIVIC, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

### I. BACKGROUND

Plaintiff J.D. Littlejohn, III, an inmate of the Trousdale Turner Correctional Center (TTCC) operated by CoreCivic, Inc., in Hartsville, Tennessee, filed this pro se action under 42 U.S.C. § 1983 to recover for alleged civil rights violations caused by living in the extremely violent conditions at TTCC since 2016, and by being forced to miss a parole hearing in 2021. (Doc. No. 1.) The Complaint requested $100 million in damages and other appropriate relief from CoreCivic and its executives and employees.

The court performed an initial review of the Complaint under the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(e)(2) and 1915A, and 42 U.S.C. § 1997e. (Doc. No. 6.) As a result of that review, the court (1) dismissed the plaintiff's claim concerning his missed parole hearing; (2) found that he failed to state a viable damages claim for emotional harm caused by the violent conditions at TTCC because Section 1997e(e) bars any claim for monetary relief based on mental or emotional injury without a prior showing of physical injury; and (3) found that although the Complaint could be liberally construed as seeking injunctive relief, it failed to allege sufficient facts to support a plausible claim to such relief. The court thus found the case subject to dismissal

but allowed the plaintiff the opportunity to amend his Complaint to more fully present a claim to injunctive relief if he so desired. (*Id.* at 10–11.)

Plaintiff has filed his Amended Complaint (Doc. No. 7), which the court will now screen under the PLRA.

## II. THE AMENDED COMPLAINT

The court must screen the Amended Complaint to determine whether it states a colorable claim to relief under the standards applicable to pro se civil rights complaints against state actors under Section 1983. Those standards are set out in the court's prior order (Doc. No. 6 at 1–2) and incorporated herein by reference.

In the Amended Complaint, the plaintiff does not seek injunctive relief as contemplated by the court in granting leave to amend, but now seeks an award of $200 million in damages based on allegations that, in addition to the mental and emotional trauma he has suffered from witnessing egregious levels of inmate violence at TTCC since 2016, he has during that time been physically assaulted, verbally harassed with racial slurs and threats of violence, and served a poisoned meal by correctional officers. (Doc. No. 7 at 5, 9–11.) He further alleges that he "was arbitrarily placed on administrative segregation" during the pendency of an "assault on a[n] officer" disciplinary charge, which "caused [him] to forfeit parole eligibility and [become] ineligible to earn or be credited sentence credits from October of 2020 to May 2021." (*Id.* at 14.) He accuses two correctional officers of fraudulently determining "who go[es] home or make[s] parole by taking bribes from other private officers[,] by having secret meetings with each other and accepting money which confirms the deal," and of doing so in his case to deny him the opportunity for parole. (*Id.* at 14–15.)

2

Case 3:22-cv-00109   Document 8   Filed 08/17/22   Page 2 of 6 PageID #: 80

As explained in the court's prior screening order (Doc. No. 6 at 7–8), Section 1997e(e) bars the plaintiff from recovering damages strictly for mental or emotional injuries produced by the conditions of his confinement. While the plaintiff alleges for the first time in his Amended Complaint that he "was physically assaulted and harass[ed] by private officer's (sic) while being here at [TTCC]" (Doc. No. 7 at 5), he does not name the officers, provide any factual context, or specify the dates of the alleged assault and harassment. Likewise, the threats allegedly made by correctional officers and one instance of physical assault "by an officer in front of the east chow hall" are not further described, other than to note that the plaintiff filed a grievance on the officer who assaulted him but did not receive a response. (*Id.* at 9.) The latest date provided in the Amended Complaint for the occurrence of any physical or verbal encounter is 2019, when the plaintiff was allegedly served a poisoned meal (*id.*); otherwise, the Amended Complaint simply indicates that the events it describes occurred beginning in December of 2016. (*Id.* at 5.)[1]

This action was not filed until 2022. The limitations period that applies to Section 1983 actions arising in Tennessee is one year, based on the applicable statute of limitations supplied by state law, Tenn. Code Ann. § 28-3-104(a)(1). *Dibrell v. City of Knoxville, Tennessee*, 984 F.3d 1156, 1161 (6th Cir. 2021). Although the statute of limitations is an affirmative defense, district courts may apply it *sua sponte* on initial review where the defense obviously applies. *Comer v. Transit Auth. of N. Kentucky*, No. 2:20-CV-00084-GFVT, 2020 WL 3719818, at *2 (E.D. Ky. July 6, 2020) (citing, *e.g.*, *Jones v. Bock*, 549 U.S. 199, 215 (2007) ("If the allegations, for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to

---

[1] The court takes judicial notice that the plaintiff's two prior federal lawsuits concerning his treatment at TTCC—which were dismissed upon initial review of his allegations of harassment and assault, *Littlejohn v. F/N/U Davis, et al.*, No. 3:19-cv-00895 (M.D. Tenn. 2019), and racially abusive language by correctional officers, *Littlejohn v. Dodds, et al.*, No. 2:19-cv-02623-TLP-tmp (W.D. Tenn. 2020)—involved misconduct that allegedly occurred in 2019. The disposition of these two prior cases is documented in attachments to the Amended Complaint. (Doc. Nos. 7-1 and 7-2.)

3

dismissal for failure to state a claim; that does not make the statute of limitations any less an affirmative defense[.]"); *Franklin v. Fisher*, No. 16-6464, 2017 WL 4404624, at *2 (6th Cir. May 15, 2017) (finding that dismissal at PLRA screening for failure to state a claim was proper because complaint's untimeliness was "obvious from the face of [the] complaint")). Because the dates provided in the Amended Complaint show that this action was not commenced within a year of the alleged assaults, threats, harassment, and poisoning, any claim based on those incidents is time-barred.

The Amended Complaint does assert one potentially timely claim to damages: it alleges that the plaintiff lost parole eligibility and the opportunity to earn sentence credits between October 2020 and May 2021, in violation of his Fourteenth Amendment right to due process, when he was arbitrarily transferred "from [']pending investigation['] to administrative segregation" due to a disciplinary charge for assault on an officer, without receiving a disciplinary report as required by "Tennessee's prison policy" and disciplinary procedures. (Doc. No. 7 at 14.)

In *Haithcote v. Hutchinson*, No. 1:21-CV-4, 2021 WL 254304 (E.D. Tenn. Jan. 25, 2021), the district court analyzed and rejected a nearly identical due process claim, as follows:

> [I]t is well-established that the Due Process Clause does not protect every change in a prisoner's conditions of confinement. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). Specifically, in *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Supreme Court specified that a prisoner is entitled to due process protections only where a deprivation "will inevitably affect the duration of his sentence" or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486–87. Thus, even where a state regulation contains mandatory language regarding processes, a failure to provide those processes to a prisoner will not violate the Due Process Clause unless it also inevitably affects the length of the prisoner's sentence or imposes the requisite "atypical and significant hardship." *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995) (finding that a failure to provide a prisoner with hearing prior to placing him in administrative segregation after his thirty-day punitive placement, despite mandatory language in a state regulation, did not implicate the prisoner's due process rights).

4

> Administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 467–73 (1983). As such, it only requires due process in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Courts generally consider the nature and duration of such confinement to determine whether it imposes an "atypical and significant hardship." *Harden–Bey v. Rutter*, 524 F.3d 789, 794 (6th Cir. 2008).
>
> Plaintiff's six-month placement in administrative segregation does not warrant due process protection. *Powell v. Washington*, 720 F. App'x 222, 226 (6th Cir. 2017) (holding that "six-month confinement in administrative segregation is insufficient to constitute an atypical and significant hardship and therefore does not implicate [] due process rights"). Further, while Plaintiff alleges that TDOC policy 404.10 created a liberty interest related to this placement that entitled him to due process hearing(s), TDOC policies and regulations do not create such liberty interests. *Taylor v. Dukes*, 25 F. App'x 423, 424 (6th Cir. 2002). . . .
>
> Also, while Plaintiff alleges that he lost his ability to earn sentencing credits during and after his placement in administrative segregation, a prisoner's inability [to] "earn future sentence credits is not sufficient to create a constitutionally protected liberty interest." *Sotherland v. Myers*, 41 F. App'x 752, 753 (6th Cir. 2002). Likewise, Plaintiff's allegation that his improper placement was a factor in the parole board's decision to deny him parole does not create a liberty interest subject to due process consideration under Tennessee law. *Settle v. Tenn. Dep't of Corr.*, 487 F. App'x 290, 291 (6th Cir. 2012) (providing that "Tennessee law has not created a liberty interest in parole eligibility"). . . .
>
> Plaintiff has set forth no other "extreme circumstances" during his administrative segregation placement from which the Court can plausibly infer that it was subject to due process considerations. Accordingly, Plaintiff's complaint fails to state a due process claim upon which relief may be granted based on his administrative segregation placement[.]

*Haithcote*, 2021 WL 254304, at *3.

This court finds the analysis and conclusion of the *Haithcote* court equally applicable in the instant case where, under the most favorable reading of the Amended Complaint, the plaintiff was confined in administrative segregation for eight months and only complains of collateral consequences with respect to sentence credits and parole. *Cf. Hairston v. Maria*, No. 2:18-CV-378, 2018 WL 6628977, at *8 (S.D. Ohio Dec. 19, 2018) (holding that placement in administrative segregation for nine or ten months did not implicate inmate's due process rights) (citing, *e.g.*,

5

*Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997) (holding that no violation resulted from more than a year in administrative segregation)). The plaintiff's due process claim is thus subject to dismissal under the authorities quoted above, for failure to plausibly support any right to relief.

### III. CONCLUSION

Accordingly, for the reasons given here and in the court's prior screening order (Doc. No. 6), this case is **DISMISSED** for failure to state a claim on which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A, and 42 U.S.C. § 1997e(e).

This is the final order in this action. The Clerk **SHALL** enter judgment. Fed. R. Civ. P. 58(b)(1).

It is so **ORDERED**.

_____
Aleta A. Trauger
United States District Judge